[Civ. No. 3815. Fourth Dist. Nov. 10, 1948.]

JUANITA C. BASTÁNCHURY et al., as Executrices, etc., Respondents, v. I. C. STEARNS et al., Appellants.

Henry O. Wackerbarth for Appellants.

Harvey, Rimel & Harvey and Milford W. Dahl for Respondents.

BARNARD, P. J.—This is an equitable action for damages for delaying payment of the purchase price for property sold in a probate proceeding.

The property consisted of a citrus grove with certain personal property used in connection therewith. Pursuant to a notice of sale the defendants offered $275,000 for this property on October 21, 1944, and on the same day the plaintiffs accepted the bid and filed a return of sale and petition for confirmation. On or about the same day, the parties executed escrow instructions at a title company. A court order confirming the sale in accordance with the terms of this bid was entered on November 3, 1944, and on the same day a deed was placed in this escrow by the plaintiffs. The balance of the purchase price was not paid into the escrow by the defendants until April 27, 1945, at which time the escrow was closed and the deed delivered. At this time an existing trust deed on the property for $120,000, held by a bank, was paid off through the escrow, and a reconveyance was recorded.

About a month after the escrow was closed and the deed delivered this action was brought. The complaint, after preliminary matters, alleged the confirmation of the sale on November 3, 1944; that on that day the plaintiffs executed and delivered in escrow with this title company a deed, "together with all documents necessary to transfer title" to the defendants; that on November 3, 1944, the plaintiffs were ready, able and willing to deliver clear title to the property to the defendants in accordance with the terms of the bid; that the defendants failed to deposit in escrow or otherwise pay the purchase price until April 27, 1945; that the defendants were in possession of the property and received all its issues and profits for these months after the date of confirmation and after a good and sufficient deed and the documents necessary to transfer title had been deposited in escrow; and that during this period the plaintiffs were deprived of the use of the $155,000 coming to them to their damage in the sum of $5,243.65.

The answer alleged that in connection with the filing of their bid for this property all parties entered into an escrow with this title company; that at all times up to April 27, 1945, this property was subject to the lien of a deed of trust for $120,000 held by this bank; and that payment for the property and delivery of the deed to the defendants was made through this escrow. It was further alleged that the time for closing the escrow had been extended by the parties, and that the plaintiffs by permitting the escrow to be closed without making further demand had waived and released any claim or right either to interest or damages.

There is little, if any, dispute as to the main facts, most of which are disclosed by written documents. A sale of the property was made and confirmed upon the showing that it was necessary, among other things, in order to secure funds with which to pay off the $120,000 trust deed. It appears, without dispute, that the defendants informed the plaintiffs in advance that it would take them some time to raise the amount of money required and that all parties signed escrow instructions before a hearing was had on the return of sale. By their written bid dated October 21, 1944, the defendants offered $275,000 for the property, 10 per cent to be paid upon acceptance and the balance upon confirmation by the court, the property to be conveyed "free and clear of all incumbrances," with the usual exceptions not material here. On the same day, the defendants signed escrow instructions dated October 2, 1944, which were prepared on a title company blank. These instructions recited that the defendants were handing the escrow agent $27,500 "and will hand you the additional sum of $247,500 after the sale has been confirmed." The title company was instructed to use these amounts when it could issue its policy of title insurance showing title to the property in question to be vested in the defendants, subject to certain exceptions not material here. It was then provided that expenses for the care of the property were to be adjusted to the date of confirmation by the court, and that certain things should be prorated as of that date. The title company was instructed that if it was unable to comply with these instructions within 60 days, to comply with them within such additional time as might be required, unless a written demand was made by any party for the return of the money or documents to the parties who had deposited the same. An approval of these instructions was signed on October 26, 1944, by the plaintiffs in which they state that they will hand the escrow agent "papers necessary to vest title as above" and instruct the title company to use the money to pay off the $120,000 trust deed, among other things, and to pay the balance to the present record owner.

On November 3, 1944, the court entered an order finding all of the allegations of the return of sale and petition for confirmation to be true. It was ordered that the sale of this property "so made" to these defendants for the sum of $275,000, "of which 10% was paid in cash accompanying the bid, and the balance to be paid upon confirmation of sale and delivery of deed, bill of sale and assignment be, and

the same is, hereby confirmed upon payment of the price aforesaid.'' On December 11, 1944, the plaintiffs notified the escrow agent in writing that they were extending the closing date of the escrow to January 20, 1945.

No one was living on this property during the time here in question. It was orally agreed between the parties that one of the executrices would continue to care for the property as she had in the past, using the men she had theretofore employed, and that the defendants would repay any expense thus incurred. Later, the plaintiffs refused to do certain spraying and fertilizing but permitted the defendants to do this at their own expense. By agreement expressed in the escrow instructions the plaintiffs finished picking certain oranges, which were considered a part of the 1944 crop, and kept the proceeds. Later, certain other oranges and some lemons were picked by a packing house selected by the defendants but, on orders from the plaintiffs, the proceeds were impounded to await the possible termination of this sale and were paid to the defendants after the escrow was closed.

In February, 1945, the plaintiffs being unable to pay an installment of $5,000 with some interest then due on the trust deed to the bank, the defendants paid these sums through the escrow. Stearns testified that he paid these amounts pursuant to an agreement that by so doing he would be given further time in which to raise the money and close the sale. The plaintiffs testified that they remembered no such conversation. The attorney for the plaintiffs and the estate testified that he knew nothing about this matter until after the $5,000 was paid. He further testified that he told Stearns several times that the escrow must be closed soon or they would declare the deal off; that the matter drifted along for several months; and that no written demand for the closing of the escrow or for the return of deposits therein was ever made. A few days before the escrow was closed Stearns notified the plaintiffs and asked them to bring in a statement of their costs in caring for the place. They handed in a statement of such expenses and also of certain taxes paid, and these were adjusted in closing the deal.

Among other things, the court found that on October 21, 1944, the plaintiffs accepted the defendants' bid and filed a return of sale and petition for confirmation; that on or about that date the parties executed escrow instructions providing for the carrying out of this probate sale and providing that

the escrow holder might use the money as directed therein when it could issue its title policy showing clear title in the defendants; that on November 3, 1944, the court entered an order confirming the sale pursuant to and upon the terms of said bid; that on November 3, 1944, the plaintiffs executed and delivered into escrow a deed in favor of the defendants; that on that date plaintiffs were ready, able and willing to deliver a clear title in accordance with the terms of the bid, and the title company was ready, willing and able to issue its policy of title insurance "in compliance with the terms of the said bid and escrow instructions"; that from November 3, 1944, to April 27, 1945, the defendants were in possession of and operating the property, receiving the rents and profits, and the plaintiffs were deprived of the use of $155,000 and thus damaged in the sum of $5,243.65; that the plaintiffs have no remedy at law and unless relief is granted as prayed for the defendants will be unjustly enriched; that the defendants paid $5,000 and certain interest on the trust deed indebtedness in February, 1945, at their own volition, without any request from the plaintiffs and without any agreement for an extension of time in closing the escrow; and that by accepting the full purchase price upon the completion of the escrow the plaintiffs did not waive or release any claim they may have had for interest or damages. Judgment was entered accordingly and this appeal followed.

Briefly stated, the appellants contend that certain essential findings are not sustained by the evidence; that clear title was not furnished until the escrow was closed; that the money was paid and the escrow closed within the time allowed; and that the claim here relied on was waived and settled by permitting the escrow to be closed and accepting the purchase price without demanding anything further.

The respondents contend that all material findings are supported by the evidence; that there has been no waiver or settlement in full; that this is an action in equity for interest as such and not for damages incidental to the contractual breach; and that, it would unjustly enrich the appellants to excuse them from paying interest for this escrow period, during which they had possession of the property and retained its issues and profits.

Whether this is an action for interest as such and not subject to the rules governing damage actions of this nature, or whether the court properly treated it as a damage action need not be decided. It is also unnecessary to consider several

points incidentally raised by both parties. It may be observed, however, that it is extremely doubtful whether the evidence is sufficient to support the finding that the defendants had possession of this property during the period in question, within the meaning of the rules and principles relied on by the respondents, or the finding that the appellants voluntarily paid $5,000 and certain interest on the trust deed debt without any agreement, express or implied, for further time to raise the money with which to complete the purchase of the property. In any event, we think the essential findings to the effect that on November 3, 1944, the respondents were ready, willing and able to deliver a clear title in accordance with the terms of the appellants' bid and that on that date the title company was ready, willing and able to issue a policy insuring the title in compliance with the terms of that bid and of the escrow instructions, are entirely without support in the record.

It was respondents' theory, apparently adopted by the court, that the acceptance of this bid and confirmation by the court constituted the only contract here; that by its terms full payment was due on confirmation and upon delivery of a deed; that they fully complied by delivering a deed into escrow on November 3; that the full purchase price was then due; and that this binding contract was entirely unaffected by anything in the escrow or in its instructions, which merely provided the means for carrying out the contract which thus existed.

Even if this strict interpretation of the contract were to be adopted, and the escrow provisions disregarded, it clearly appears that the respondents did not fully comply with its terms by delivering a deed into escrow on November 3. They did not, as they allege, also deliver on that date "all necessary documents to transfer title," and the court carefully refrained from finding that they did this. The appellants' written bid did not provide for payment of the balance upon confirmation by the court, as respondents argue, but upon such confirmation plus a conveyance of title "free and clear of all incumbrances," with the usual exceptions not material here. The order of confirmation referred to this bid and its provisions, and ordered the sale confirmed "upon payment of the price aforesaid." By its own terms the order of confirmation was not to take effect until the full purchase price was paid in accordance with the bid, and by the terms

of the bid the balance of the purchase price was not to be paid until the property was conveyed free and clear of incumbrances. Apart from the escrow agreement the respondents were unable to furnish such a conveyance and it clearly appears that they did not do so prior to the closing of the escrow, at which time the balance of the purchase price became due under the contract, upon which they rely.

One of the main purposes of the probate sale was to enable the respondents to pay off this $120,000 deed of trust. They desired to use the purchase price for this purpose and the escrow instructions provided for this as, otherwise, the respondents could not furnish clear title. These escrow instructions were entered into as an integral part of the deal and prior to the order of confirmation. They may not be disregarded under these circumstances and they have an important bearing upon the time when the balance of the purchase price became payable. By the provisions of the escrow instructions the appellants were given 60 days in which to pay the balance, and it was further provided that this time was to be automatically extended in the absence of a written withdrawal from the escrow by either party.

No such notice of withdrawal was given. The matter was allowed to drift in the hope of an eventual completion of the proposed sale and when the balance was paid within the time as thus extended the respondents were, for the first time, able to convey a clear title, which they then did. In view of this written extension of time, contained in the escrow instructions, it is immaterial whether or not any special agreement was made in February, in connection with the payment on the trust deed which was advanced by the appellants. The appellants, by permission of the respondents, spent large amounts during the interim for the care and protection of the property. Any possible constructive possession during that period was more of a burden to them than a benefit, except as the preservation of the property might eventually benefit either party.

Whether the escrow instructions are considered a part of the contract or not, in neither event does the evidence sustain the findings that the respondents were ready, able and willing to deliver clear title on November 3, 1944, or that the title company was then able and willing to issue its policy of title insurance in accordance with the terms of the bid and the escrow agreement of the parties.

Under the views thus expressed it is unnecessary to consider the further question raised as to whether or not a waiver or release of any further demands resulted from the manner in which the deal was allowed to be closed.

The judgment is reversed.

Griffin, J., and Mussell, J., concurred.